UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
NORTHERN DIVISION

JOSH FOLEY                                                                      PLAINTIFF
ADC #177695

V.                              No. 3:21-CV-189-JTR

TERRY MILLER,
Clay County Sheriff                                                             DEFENDANT

# MEMORANDUM OPINION AND ORDER[1]

## I.  Introduction

Plaintiff Josh Foley ("Foley"), a former pretrial detainee in the Clay County Detention Center ("CCDC"),[2] filed this § 1983 action alleging his constitutional rights were violated by Defendant Sheriff Terry Miller ("Sheriff Miller").

Sheriff Miller has filed a Motion for Summary Judgment (*Doc. 16*), Brief in Support (*Doc. 17*), and "Statement of Indisputable Material Facts" (*Doc. 18*) arguing that Foley's claims should be dismissed because he failed to exhaust his administrative remedies as required by the Prison Litigation Reform Act ("PLRA"). Foley has filed a Response (*Doc. 21*) and Statement of Disputed Facts (*Doc. 22*). Thus, the issue of exhaustion is joined and ready for disposition.

---

[1] The parties consented, in writing, to the jurisdiction of a United States Magistrate Judge. *Doc. 19*.

[2] Foley has since been convicted and is a prisoner in the Arkansas Division of Correction. *See Doc. 2 at 1, 9; Doc. 26*.

For the reasons explained below, Sheriff Miller's Motion for Summary Judgment (*Doc. 16*) is GRANTED.[3]

## II.  Discussion

### A.  The PLRA's Mandatory Exhaustion Requirements

Under the PLRA, prisoners are required to exhaust all available administrative remedies prior to filing suit. 42 U.S.C. § 1997e(a).[4] The exhaustion requirement is mandatory; and this Court must dismiss any claim that a prisoner did not fully and properly exhaust. *Woodford v. Ngo*, 548 U.S. 81, 85 (2006); *Jones v. Bock,* 549 U.S. 199, 218 (2007).

"It is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones*, 549 U.S. at 218; *see also Woodford*, 548 U.S. at 90 (explaining that administrative exhaustion "means using all steps that the agency holds out, and doing so properly so that the agency addresses the issues on the merits.") Thus, Foley was required to exhaust all available CCDC administrative

---

[3]Summary judgment is appropriate when the record, viewed in a light most favorable to the nonmoving party, demonstrates that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23 (1986); *Anderson v. Liberty Lobby Inc.,* 477 U.S. 242, 249–50 (1986). The moving party bears the initial burden of demonstrating the absence of a genuine dispute of material fact. *Celotex,* 477 U.S. at 323. Thereafter, the nonmoving party must present specific facts demonstrating that there is a material dispute for trial. *See* Fed R. Civ. P. 56(c); *Torgerson v. City of Rochester,* 643 F.3d 1031, 1042 (8th Cir. 2011).

[4] "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).

remedies prior to filing his Complaint. *Jones*, 549 U.S. at 218. ("[I]t is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion.")

The CCDC provides the following administrative process for inmates to exhaust grievances: (1) if an inmate cannot resolve a problem informally, he may file a grievance—written either on the official CCDC grievance form or on "[a]ny paper"—by giving it "to any staff member for delivery to a jail supervisor;" (2) the jail supervisor, or designee, investigates all matters, provides a written response to the inmate within ten business days, and maintains a separate file with a copy of the grievance; and (3) if the inmate is not satisfied with the response, or does not receive a response within ten business days, he may file a written appeal to the Sheriff. *Doc. 18-4*.

B.   **Sheriff Miller's Motion for Summary Judgment**

In this § 1983 action, Foley alleges that, around March 18, 2021, he contracted COVID-19 while incarcerated in the CCDC and started coughing up blood and having trouble breathing. *Doc. 2 at 5; Doc. 21 at 10*. According to Foley, Sheriff Miller refused to allow him to be transported to the emergency room until he agreed to pay for the full cost of the medical treatment out of his own pocket. *Doc. 2 at 5*. Foley further alleges that, at an unspecified time during his CCDC incarceration, he was placed on suicide watch in a dark cell and jail employees failed to check on him every fifteen minutes, as required by CCDC "standards." *Id*.

In his Motion for Summary Judgment, Sheriff Miller contends that Foley's claims should be dismissed because he failed to exhaust the administrative remedies available to him at CCDC. *Doc. 16*. In support of his Motion, he attaches the sworn affidavit of CCDC administrative assistant, Hope Burns ("Ms. Burns"). Ms. Burns declares that Foley's CCDC file contains "approximately twelve requests and grievances," but not one of those grievances relates to "a denial of medical care related to COVID-19, coughing up blood, or being placed on suicide watch." *Doc. 18-1*.

In his Statement of Dispute Facts, Foley writes, under penalty of perjury, that: "Plaintiff wishes to state categorically, for the record, that he definitely filed a grievance with the CCDC in regard[] to denial of medical care as it relates to Covid-19, coughing up blood, and being placed on 'suicide watch' for so long." *Doc. 22 at 2*. Foley further laments that, because the CCDC does *not* provide carbon copies of filed grievances to the inmates, he has no way to prove that he ever submitted the grievance. *Doc. 22*.

Sheriff Miller and Foley have presented potentially conflicting sworn statements on the material issue of whether Foley exhausted his administrative remedies.[5] At the summary judgment stage, the Court may not make credibility

---

[5] The affidavits are *potentially* conflicting because it is possible that Foley submitted a written grievance concerning the facts in this case but, because CCDC has a rudimentary paper grievance system without any electronic filing or paper copies provided to the inmate, Foley's

determinations or weigh evidence in favor of one party's version against the other. *Coker v. Arkansas State Police*, 734 F.3d 838, 843 (8th Cir. 2013) ("[I]t is not [the court's] function to remove the credibility assessment from the jury."). However, the Court may disregard facts provided by Sheriff Miller or Foley if their version "is so utterly discredited by the record that no reasonable jury could [] believe[] him." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

After reviewing the entire record, I have found no evidence that definitively discredits either Ms. Burns' Affidavit or Foley's sworn statement. However, there is one piece of evidence that bolsters Foley's version of facts. On March 30, 2021, shortly after he contracted COVID-19 and had to be transported to the emergency room for treatment, Foley submitted the following grievance:

> I keep filling out medical request and for whatever reason they don't make it to Nathan or Chad. This is utterly ridiculous. Med request after med request and request of requests just seem to completely get lost. It's a lot easier to deal with the crazy guy when you can simply ignore him. Just lock him on quarantine and treat him like a [illegible]. Keep him in the [illegible] and feed him bullshit.

*Doc. 18-3 at 11*.

Thus, viewing the facts in a light most favorable to Foley, the Court assumes, for summary judgment purposes only, that Foley filed, or attempted to file, a grievance related to this § 1983 action. Even so, Foley has produced no evidence that he *fully exhausted* his administrative remedies.

---

grievance simply got lost and, accordingly, does not appear in his official CCDC grievance file.

Under the CCDC policy, filing (or attempting to file) a grievance with a jail supervisor is only the first step in at two-step process. To fully utilize the CCDC's grievance policy, an inmate must appeal the "response *or lack of response* to the sheriff." *Doc. 18-4 at 2* (emphasis added).

In his verified Complaint, Foley acknowledges that the "grievance process with Clay County stops at the sheriff." *Doc. 2 at 9*. Yet, Foley does not allege, and there is no evidence to suggest, that he pursued his grievance through *both* steps of the CCDC's grievance procedure. *See Hammett v. Cofield,* 681 F.3d 945, 947 (8th Cir. 2012) (A prisoner's remedies are exhausted "when [the] inmate pursues the prison grievance process to *its final stage* and receives an adverse decision on the merits.") (emphasis added).

Considering that a grievance appeal would go directly to Sheriff Miller—the person who was the target of the grievance—Foley may have *subjectively believed* that appeal would have been futile and that the CCDC grievance procedure was unavailable to him.[6] However, even if Foley had this subjective belief, it falls short of the objective evidence necessary to create a genuine issue of material fact concerning whether the second step of the CCDC's grievance process was made

---

[6] Inmates are only required to exhaust *available* administrative remedies. *Ross v. Blake*, 578 U.S. 632, 642 (2016). However, Foley does *not* allege that: he was thwarted from filing his grievance; the ADC's grievance procedure was incapable of use; or the grievance procedure was otherwise made unavailable to him. *Id.*

available to him. *See Lyon*, 305 F.3d at 809 (A court cannot "consider an inmate's merely subjective beliefs, logical or otherwise, in determining whether administrative procedures are 'available.'"); *Ross v. Blake*, 136 S. Ct. 1850, 1860 (2016).

Further, the purpose for the PLRA's exhaustion requirement includes: (1) allowing a facility the opportunity to address complaints before being subjected to suit; (2) "reducing litigation to the extent complaints are satisfactorily resolved," and (3) "improving litigation that does occur by leading to the preparation of a useful record." *See Jones v. Bock,* 549 U.S. 199, 219 (2007). By failing to appeal his grievance, Foley did not afford Sheriff Miller the opportunity to address or resolve his complaints and there is no "useful record" for the Court to review. Consequently, the purpose of the PLRA's exhaustion requirement was thwarted.

Because Foley did not appeal the lack of response to the Sheriff, he did not *fully* exhaust his available administrative remedies. Accordingly, Foley's claims against Sheriff Miller will be dismissed, without prejudice.

### III.  Conclusion

IT IS THEREFORE ORDERED THAT:

1. Sheriff Miller's Motion for Summary Judgment (*Doc. 16*) is GRANTED.

2.      Foley's claims against Sheriff Miller are DISMISSED, without prejudice, for failure to exhaust administrative remedies.

3.      Judgment will enter accordingly.

4.      Pursuant to 28 U.S.C. § 1915(a)(3), the Court certifies that an *in forma pauperis* appeal of this Order or the accompanying Judgment would not be taken in good faith.

SO ORDERED this 17th day of March, 2023.

_____
UNITED STATES MAGISTRATE JUDGE